No. 14-35861
No. 14-35872

───────────────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

───────────────────────────

LARRY ARNETT, et al., individually and on behalf of all others similarly
situated,

Plaintiffs-Appellees

and

ERICH B. NEUMANN and FRANCIS VITALE and DOROTHY VITALE

Objector-Appellants

v.

BANK OF AMERICA, N.A., in its own capacity and as successor by merger to
BAC HOME LOANS SERVICING, LP,

Defendant-Appellee.

───────────────────────────

On Appeal From Judgment Of
The United States District Court For The
District of Oregon
Case No. 3:11-cv-1372-SI
Honorable Michael H. Simon

───────────────────────────

**BRIEF OF DEFENDANT-APPELLEE**

| | | |
|---|---|---|
| Tanya Durkee Urbach | John C. Englander | David L. Permut |
| Peter D. Hawkes | Matthew G. Lindenbaum | GOODWIN PROCTER LLP |
| LANE POWELL PC | Katherine Aldrich | 901 New York Ave., N.W. |
| Suite 2100 | David S. Kantrowitz | Washington, DC 20001 |
| 601 S.W. Second Ave. | GOODWIN PROCTER LLP | (202) 346-4000 |
| Portland, OR 97204 | Exchange Place | |
| (503) 778-2100 | Boston, MA 02109 | |
| | (617) 570-1000 | |

*Attorneys for the Defendant-Appellee*

March 4, 2015

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellee Bank of America, N.A. is a wholly-owned indirect subsidiary of the publicly-traded Bank of America Corporation. Bank of America Corporation is a publicly-held company whose shares are traded on the New York Stock Exchange. It has no parent company and no publicly-held company owns more than 10% of Bank of America Corporation's shares.

BAC Home Loans Servicing, LP, effective July 1, 2011, merged with and into Bank of America, N.A.

## <u>TABLE OF CONTENTS</u>

**ISSUES PRESENTED**................................................................................1

**STATEMENT OF THE CASE**.................................................................2

**SUMMARY OF ARGUMENT**.................................................................8

**STANDARD OF REVIEW**......................................................................11

**ARGUMENT**...........................................................................................12

I.    Escrow Credits Are a Fair and Reasonable Method of Providing
Monetary Relief. ...............................................................................12

    A.    An Escrow Credit Is Not a Coupon.......................................12

    B.    There Is No Meaningful Difference Between Escrow Credits
and Checks. ...........................................................................14

II.    Enhancements to the Opt-Out Provide Real Prospective Relief. .................15

III.    The District Court Did Not Abuse Its Discretion Because It Is Not
Improper to Release Claims. ............................................................17

IV.    The District Court Did Not Abuse Its Discretion By Approving the
Settlement Despite the Fact that Certain Briefs Were Filed Under
Seal.....................................................................................................18

**CONCLUSION**........................................................................................**20**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....................................................................11, 18

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ............................................................................18

*Decambaliza v. QBE Holdings, Inc.*,
2013 WL 5777294 (W.D. Wis. Oct. 25, 2013) ...................................................4

*Diaz v. HSBC Bank USA, N.A., et al.*,
No. 13-21104 (S.D. Fla.) ....................................................................................3

*Feaz v. Wells Fargo Bank, N.A.*,
745 F.3d 1098 (11th Cir. 2014) ....................................................................4, 15

*Feaz v. Wells Fargo Bank, N.A.*,
No. 12-0350, 2012 WL 6677904 (S.D. Ala. Dec. 21, 2012).............................15

*Feaz v. Wells Fargo Bank, N.A.*,
No. 13-10230, at 14-22 (11th Cir. May 10, 2013)............................................15

*Fladell v. Wells Fargo Bank, N.A., et al.*,
No. 13-60721 (S.D. Fla.) ....................................................................................3

*Fluery v. Richemont N. Am., Inc.*,
No. C-05-4525, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008)..........................13

*Gallik v. U.S. Dep't of Veterans Affairs*,
56 F. App'x 429 (9th Cir. 2003) ..........................................................12, 17, 18

*Gustafson v. BAC Home Loans Servicing, LP*,
294 F.R.D. 529 (C.D. Cal. 2013)........................................................................5

*Hanlon v. Chrysler Corp.*,
150 F. 3d 1011 (9th Cir. 1998) .........................................................................11

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
225 F.R.D. 616 (S.D. Cal. 2005) ......................................................................20

*In re Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ............................................................14

*Jackson v. U.S. Bank, N.A.*,
    --- F. Supp. 2d ----, 2014 WL 4179867 (S.D. Fla.) ................................4

*Kolbe v. BAC Home Loans Servicing, L.P.*,
    738 F.3d 432 (1st Cir. 2013) (*en banc*) ........................................4, 15

*Kolbe v. BAC Home Loans Serving., LP*,
    No. 11-2030, at 13-18 (1st Cir. Dec. 21, 2012) ...................................15

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................................20

*Lane v. Wells Fargo Bank, N.A.*,
    2013 WL 269133 (N.D. Cal. Jan. 24, 2013) .......................................15

*McKenzie v. Wells Fargo Home Mortg., Inc.*,
    No. c-11-04956, 2012 WL 5372120 (N.D. Cal. Oct. 30, 2012) ........................15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................20

*Palmer v. Nigaglioni*,
    508 F. App'x 658 (9th Cir. 2013) .....................................................11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................11, 20

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) .............................................13

*United States v. Asiru*,
    222 F. App'x 584 (9th Cir. 2007) .....................................................12

*Williams v. Wells Fargo, N.A.*,
    280 F.R.D 665 (S.D. Fla. 2012) .........................................................5

**Statutes**

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

28 U.S.C. § 1332(d)(2)(A) .........................................................................1

28 U.S.C. § 1367 ......................................................................................1

42 U.S.C. § 4012a(e)(2) ...........................................................................3

**Other Authorities**

24 C.F.R. 3500.17 ..................................................................................13

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1367. This Court has jurisdiction to hear this appeal of the District Court's final judgment entered on October 22, 2014 under 28 U.S.C. § 1291.

## ISSUES PRESENTED[1]

1.      Whether the District Court acted within its discretion in approving a settlement that provided for compensation to certain settlement class members by credit to their escrow accounts rather than by check.

2.      Whether the District Court acted within its direction in approving a settlement where a portion of the prospective relief provided to the settlement class allows borrowers to "opt-out" to a lower flood insurance requirement, but put the onus on some settlement class members to request an Opt-Out Form and execute it within 35 days.

3.      Whether the District Court abused its discretion in approving a settlement where the prospective relief is subject to a three year limit.

4.      Whether the District Court acted within its discretion in approving a settlement in which the settlement class members released claims.

---

[1] Although the Neumann and Vitale appeals also raise issues regarding the attorneys' fees award to Class Counsel, Bank of America defers to Plaintiffs-Appellees' brief on those matters.

1

5.     Whether the District Court acted within its discretion in approving the settlement while certain filings remained under seal where no settlement class member moved to unseal any filing.

## STATEMENT OF THE CASE

This is an appeal from a final order approving a manifestly reasonable class action settlement.  Significantly, none of the objector-appellants attacks the fundamental components or structure of this settlement – such as the amount of monetary relief provided, the distribution formula, or the definition of the class. Instead, they pick at the edges, focusing on minor details that do not call into question the settlement's overall fairness.  The settlement itself was negotiated after two and one half years of extensive litigation and three lengthy days of mediation, and it was negotiated against the backdrop of extensive discovery and a well-developed body of case law which aided all parties in defining the risks that the litigation presented.  The resulting settlement includes $31,000,000.00 in non-reversionary payments, and also will result in material prospective relief.  There is no question that the record justifies the District Court's approval of the settlement as fair and reasonable to the plaintiff class and establishes that the objector-appellants' complaints are entirely without merit.

On December 16, 2011, Plaintiffs brought a putative class action against Bank of America, N.A., individually and as successor by merger to Bank of

America Home Loans Servicing, LP ("Bank of America" or the "Bank")
challenging Bank of America's lender-placed flood insurance practices. Plaintiffs
did not challenge Bank of America's authority to require flood insurance or to
place its own flood insurance on a borrower's property when he or she failed to do
so. Indeed, Bank of America is required to lender-place flood insurance under
federal law. 42 U.S.C. § 4012a(e)(2). Instead, Plaintiffs alleged that Bank of
America unlawfully required borrowers to maintain flood insurance coverage at
the replacement cost value of their properties (up to a maximum of $250,000),
rather than the unpaid principal balance of the loan and that Bank of America
unlawfully profited from commissions and other compensation arrangements with
its lender-placed flood insurance vendors.

The *Arnett* case was one of dozens of putative class actions filed against
mortgage loan servicers challenging their lender-placed insurance practices. *E.g.*,
*Diaz v. HSBC Bank USA, N.A., et al.*, No. 13-21104 (S.D. Fla.); *Fladell v. Wells
Fargo Bank, N.A., et al.*, No. 13-60721 (S.D. Fla.). Six separate putative class
actions ultimately were consolidated with the *Arnett* action through the filing of a
consolidated amended complaint.

The parties conducted extensive discovery and motion practice in both the
*Arnett* case and the cases that eventually were consolidated with it. The Bank
produced over four million pages of documents, including its policies and

procedures, insurance manuals, financial records, and internal emails from dozens of Bank of America employees. In addition, Plaintiffs took the depositions of approximately 20 witnesses who were current or former employees of the Bank or its insurance affiliates and vendors. During the course of the proceedings, the Parties litigated three motions to dismiss or for judgment on the pleadings, one of which was litigated to the First Circuit. Plaintiffs' motions for class certification in the *Arnett* and *Skansgaard* cases also were fully briefed.

Moreover, given the breadth of cases filed against the mortgage lending industry, a number of orders in similar cases were issued during the course of these proceedings. At least two cases decided around the time of settlement upheld a servicer's discretion to require replacement cost value flood coverage. *See Kolbe v. BAC Home Loans Servicing, L.P.*, 738 F.3d 432, 443-53 (1st Cir. 2013) (*en banc*); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1109-10 (11th Cir. 2014). Some motions to dismiss were granted and some were denied. *See, e.g.*, *Decambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294 (W.D. Wis. Oct. 25, 2013) (motion to dismiss granted); *Jackson v. U.S. Bank, N.A.*, --- F. Supp. 2d ----, 2014 WL 4179867 (S.D. Fla.) (motion to dismiss denied). Some classes were certified, while others were not. *See, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013) (denial of nationwide lender-placed hazard insurance class); *Williams v. Wells Fargo, N.A.*, 280 F.R.D 665 (S.D. Fla. 2012) (certification

of Florida lender-placed hazard insurance class). Accordingly, the Parties were well-situated to assess both the strengths and weaknesses of the case prior to settlement.

After months of arms-length negotiations and multiple mediation sessions presided over by an experienced neutral, Professor Eric Green, Bank of America and the various plaintiffs reached an agreement to settle this consolidated action. As part of the Settlement, Bank of America agreed to make $31,000,000 in non-reversionary payments and to provide additional prospective relief.

As relevant to this appeal, the monetary relief will take one of two forms. First, Bank of America has the discretion to pay class members who have active escrow accounts with an escrow credit. Settlement Agreement, SER027-028, ¶ 34. (Citations to the "SER" refer to the Joint Supplemental Excerpts of Record for all Appellees, prepared pursuant to Local 9th Circuit Rule 30-1.7.) Second, where an escrow account is unavailable, such as when the borrower has paid off the loan or no longer has an escrow account, the Bank will issue those borrowers a check. *Id.*

With respect to the prospective relief, Bank of America agreed to alter its existing procedures that permit borrowers to opt-out of Bank of America's requirement that they maintain flood insurance coverage equivalent to replacement cost value and instead maintain coverage only up to the loan's unpaid principal balance. Pursuant to the Settlement Agreement, the Bank will now include an Opt-

Out Form with every letter that the Bank sends to a borrower notifying the

borrower that he does not have sufficient flood insurance coverage. Settlement

Agreement, SER021, ¶ 20. Additionally, Bank of America agreed to provide

borrowers with an Opt-Out Form upon request. *Id.* at ¶ 19. This prospective relief

will be in force for a period of three years after the effective date of the settlement.

*See id.* at *¶¶* 19-20.

On April 9, 2014, Plaintiffs moved the District Court for preliminary

approval of the class action settlement ("Settlement"). Pls.' Unopposed Mot. for

Preliminary Approval of Class Action Settlement, SER329-332. On April 17,

2014, the District Court preliminarily approved the Settlement.[2] Thereafter, mail

notice of the Settlement was provided to over 600,000 putative settlement class

members. Notably, out of 663,192 settlement class members, only 99 (0.015%)

elected to opt-out from the settlement, and only seven objected to its terms (two of

these objectors withdrew their objections prior to the final approval hearing). *See*

Declaration of Richard W. Simmons, SER137-159. On September 18, 2014, the

District Court granted final approval of the Settlement and partially granted Class

---

[2] Order Preliminarily Approving Proposed Class Action Settlement and Notice
Procedures, Certifying Settlement Class, Appointing Class Counsel and Class
Representatives, and Setting Final Approval Hearing for Class Action Settlement,
SER113-122.

Counsel's request for attorneys' fees, specifically rejecting each of the objector's arguments.[3]

Of the five sets of objectors, only Neumann and the Vitales, both *pro se*, appealed.[4]  Neumann argues that distribution of some settlement funds by escrow credit is unfair because (1) an escrow credit is analogous to a coupon, and (2) providing some class members with escrow credits and others with checks provides special treatment to the recipients of checks.  Brief for Objector-Appellant Erich B. Neumann ("Neumann Br."), at 1.  Neumann also argues that the prospective relief is illusory because the Opt-Out Form does not specifically state that a lower coverage amount will result in a lower insurance premium.  *Id*. at 1-2.  Lastly, Neumann complains that that the District Court erred in approving the Settlement Agreement without unsealing certain filings.  *Id.* at 2.[5]

The Vitales argue the Opt-Out Form renders the Settlement unfair because (1) the "onus" is on the borrower to affirmatively request the Opt-Out Form; and (2) the Bank is required to honor an Opt-Out Form only if it is received within 35

---

[3] *See* Opinion and Order, SER086-112, and Order Granting Final Approval of Class Action Settlement, SER003-085.  The Court entered a final judgment in this action on October 22, 2014.  SER001-002.

[4] One other set of objectors, the Halls, also appealed, and that appeal is currently the subject of a pending Motion for Summary Affirmance.  *See* Case No. 14-35850.

[5] Neumann also appeals the District Court's entry of an attorneys' fee award without considering evidence such as itemized time records.  Bank of America defers to Plaintiffs-Appellees brief on this issue.

days of being sent to the borrower.  Informal Brief of Appellants Francis Vitale and Dorothea Vitale ("Vitale Br."), at 3.  The Vitales also complain that the prospective relief is limited to a period of three years.  *Id.*  Finally, the Vitales contend that the release in the Settlement Agreement is overbroad because it prevents them from bringing claims, particularly state law claims, against Bank of America.  *Id.*[6]

## SUMMARY OF ARGUMENT

The District Court properly approved the Settlement as a fair and reasonable compromise of Plaintiffs' claims.  The Settlement provides substantial relief to class members under circumstances where Plaintiffs' claims were highly debatable and subject to substantial adverse case law.  It is the product of lengthy, contested litigation, extensive arm's length negotiations, and appropriate and careful review by the District Court.  The *pro se* objector-appellants purport to challenge certain of the details of the relief provided, but their contentions misunderstand the substance of the relief or fail to appreciate that the relief is the appropriate compromise of competing positions.  The objector-appellants' arguments are without merit – and many of them were waived by the objector-appellants' failure to assert them below.

For example, Neumann's challenges to the payment of escrow credits border

_____

[6] The Vitales also appeal the District Court's award of attorneys' fees.  Again, Bank of America defers to Plaintiffs-Appellees brief on this issue.

on the frivolous. To the extent that borrowers paid for lender-placed flood insurance, they did so through their escrow accounts. Providing them with monetary relief through that same escrow account makes perfect sense. An escrow credit is in no way analogous to a coupon, which provides a discount on a later purchase. It is not a discount, nor does it require that the class members purchase anything from Bank of America at all. Instead, the credit is directly applied to the class members' account and has the same effect as a cash deposit. If anything, a check that must be cashed is a less direct form of relief.

The objector-appellants' arguments concerning the Opt-Out Form also lack merit. To begin, Bank of America's policy of replacement cost coverage is entirely appropriate, and validated by many courts. An opt-out is by no means required, although Bank of America chose to implement one before the *Arnett* Complaint was filed. Under the Settlement, Bank of America has agreed to provide the Opt-Out form to class members with every mailed notice informing them that they do not have adequate flood insurance coverage. Only those borrowers who are not in a notice cycle need to request a form. This is a reasonable practice, as is requiring borrowers to return the form in 35 days, and limiting the Bank's obligation to provide this relief to a three-year period.

The District Court also acted well within its discretion in approving the Settlement while certain filings remained under seal. Significantly, none of the

9

filings related to Plaintiffs' motions for preliminary or final approval was ever sealed. Moreover, no class member moved to unseal any filings or asserted this objection below. Each class member was provided with a mailed notice, pre-approved by the Court, that included all of the material terms of the settlement, including explicit instructions on how to opt out, object, or seek additional information. The size of the class, which is the only specific piece of information Neumann contends was improperly sealed, was publicly available in the settlement briefs (both as an estimate in Plaintiffs' preliminary approval brief and as a final number in the final approval brief). *See* Pls.' Unopposed Mot. for Preliminary Approval of Class Action Settlement, SER320-332; Pls.' Mot. for Final Approval of Class Action Settlement and Mem. of Law in Supp., SER133-136.

Finally, the argument that class members should not have to release any claims – particularly any claims they could bring in New York state court – misunderstands the nature of a class settlement. If class members wished to maintain their claims, they were fully informed of their right to request exclusion from the class.

For these reasons, the District Court did not abuse its discretion when approving the Settlement, and this Court should not disturb the District Court's final judgment.

## STANDARD OF REVIEW

"'The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.' . . . This is especially true in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  The Court is not to "substitute [its] notions of fairness for those of the district judge and the parties to the agreement." *Id.* at 626.

The district court's decision can be disturbed only where the district court abused its discretion.  *Palmer v. Nigaglioni*, 508 F. App'x 658, 658 (9th Cir. 2013) (citing *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027, 1029 (9th Cir. 1998)). This means that this Court should affirm if "the district judge applies the proper legal standard and his or her findings of fact are not clearly erroneous." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963-64 (9th Cir. 2009) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir. 2000)).  In conducting this deferential review, it is the "settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F. 3d at 1027, 1029.

11

## ARGUMENT

### I. Escrow Credits Are a Fair and Reasonable Method of Providing Monetary Relief.

Appellant Neumann argues that providing class members relief in the form of an escrow credit is unfair because – according to Neumann – escrow credits are like coupons, and are inferior to payment by check. Neumann Br. at 3-4. This issue can be easily disposed of because "issues not raised below are waived on appeal," and Neumann did not raise this issue below. *See Gallik v. U.S. Dep't of Veterans Affairs*, 56 F. App'x 429, 429 (9th Cir. 2003).[7] In any event, Neumann's objections to escrow credits are wholly without merit.

#### A. An Escrow Credit Is Not a Coupon.

The Settlement Agreement provides that the Bank may provide borrowers with escrow accounts with "escrow credits equal to the Settlement Payment." Settlement Agreement, SER027-028, ¶ 34. The payment of settlement funds through an escrow credit is perfectly appropriate. The lender-placed insurance premiums at issue were originally deducted from borrowers' escrow accounts. Providing a credit to the same account in the dollar amount for which class members are entitled to relief is both logical and efficient.

---

[7] *See also United States v. Asiru*, 222 F. App'x 584, 586 (9th Cir. 2007) ("The Ninth Circuit 'will not . . . review an issue not raised below unless necessary to prevent manifest injustice.'") (quoting *Johnson v. Dir., Office of Workers' Comp. Programs*, 183 F.3d 1169, 1171 (9th Cir. 1999)).

An escrow credit is not a coupon, and a settlement providing escrow credits to class members is not analogous to a coupon settlement. A coupon settlement is one where the relief constitutes "a discount on another product or service offered by the defendant in the lawsuit." *Fluery v. Richemont N. Am., Inc.*, No. C-05-4525, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008). A coupon, therefore, requires a class member to purchase goods or services that they might not purchase absent the coupon in order to receive the benefit. Thus, "coupons are not only worth less than face value to class members, but they cost [defendants] less as well" and, in fact, "can result in a tremendous sales bonanza" to defendants. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010). These concerns are not present here.

An escrow credit provides a dollar for dollar benefit to borrowers that is no different than if cash had been deposited into their account. Depending on the status of each borrower's account, the credit will: (1) reduce borrowers' future monthly payments attributable to taxes or insurance; (2) eliminate some or all of any delinquency to a borrower's escrow account; or (3) result in a direct refund to the borrower if there is a surplus in the escrow account. 24 C.F.R. 3500.17.

Furthermore, unlike a coupon (or even a check), class members do not need to take any action to receive the full benefit of the escrow credit; it will automatically be deposited into their accounts. Settlement Agreement, SER027-028 ¶

34.  They are not forced to purchase a good or service from Bank of America, nor will they need to spend additional money in order to receive the benefit.  The concerns regarding illusory benefits in coupon settlements are not present here. *See In re Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013).

### B.  There Is No Meaningful Difference Between Escrow Credits and Checks.

Under the Settlement, whether a class member receives their monetary benefit via escrow credit or check, he receives the same amount of money.  Like checks, the escrow credit will provide dollar for dollar relief, but unlike a check, class members who receive an escrow credit will not need to take steps to get it cashed.  Instead, the credit will be automatically applied to class members' accounts.

Moreover, as discussed above, an escrow credit may result in a check being remitted to class members anyway.  If a borrower's escrow account credit creates a "surplus" in the escrow account equal to or greater than $50, Bank of America would be required to refund that surplus to the borrower following the borrower's annual escrow account analysis.  24 C.F.R. 3500.17(f)(2).  Thus, borrowers receiving escrow credits may receive checks for some or all of their settlement relief regardless.

14

## II. Enhancements to the Opt-Out Provide Real Prospective Relief.

It is Bank of America's general policy to require borrowers to maintain a level of flood insurance coverage equivalent to the replacement cost value of the property (up to the statutory maximum of $250,000). The replacement cost coverage standard complies with federal regulations and the Bank is under no legal obligation to provide borrowers with the option to opt-out of its replacement cost coverage requirement. Indeed, the federal government recommends that lenders require replacement cost coverage.[8] And several courts have held that lenders have contractual authority to require such coverage. *See, e.g.*, *Kolbe v. BAC Home Loans Servicing, L.P.*, 738 F.3d 432, 443-53 (1st Cir. 2013) (*en banc*).[9]

Nevertheless, as a courtesy, Bank of America offers borrowers the opportunity to opt-out of the replacement cost coverage requirement and maintain coverage equal to the unpaid principal balance of their mortgage loans so long as their decision to maintain lower coverage is memorialized in writing. Bank of America provided this opt-out option to its borrowers before the litigation, but

---

[8] *See* Br. for the United States as Amicus Curiae, *Feaz v. Wells Fargo Bank, N.A.*, No. 13-10230, at 14-22 (11th Cir. May 10, 2013); Br. for the United States as Amicus Curiae, *Kolbe v. BAC Home Loans Serving., LP*, No. 11-2030, at 13-18 (1st Cir. Dec. 21, 2012).

[9] *See also Feaz*, 745 F.3d at 1104-11; *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 269133, at *6-9 (N.D. Cal. Jan. 24, 2013); *McKenzie v. Wells Fargo Home Mortg., Inc.*, No. c-11-04956, 2012 WL 5372120, at *13 (N.D. Cal. Oct. 30, 2012); *Feaz v. Wells Fargo Bank, N.A.*, No. 12-0350, 2012 WL 6677904, at *1 (S.D. Ala. Dec. 21, 2012), *adopting* 2012 WL 6680301, at *8 (S.D. Ala. Nov. 19, 2012).

Bank of America has now agreed to expand its notification of the borrower's ability to opt-out, by agreeing to provide an Opt-Out Form with all notices seeking proof of insurance, not just the first and third notice (as is the Bank's existing practice). Settlement Agreement, SER021, ¶ 20. Bank of America also agreed to allow borrowers to request an Opt-Out Form at any time. *Id*. ¶ 19.

The Appellants argue that this relief is illusory because the burden is on the borrower to request the Opt-Out Form. That is not true. Under the Settlement, Bank of America provides class members with up to three Opt-Out Forms, without any request by the borrower. Because requiring coverage at replacement cost value is fully within Bank of America's discretion and authority, providing another opportunity to opt-out of this coverage is a real benefit to class members who do not wish to maintain coverage at that amount.

Appellants also complain that the opt-out is illusory relief because, under the Settlement, the Bank does not have to honor an Opt-Out Form if it is received more than 35 after it was sent to the borrower. Vitale Br. at 3. This concern is unfounded. As the Bank is under no duty to provide an opt-out option at all, placing a 35 day limit on the return of the Opt-Out Form cannot be objectionable – particularly as Bank of America needs to cancel and replace the borrower's insurance policy once they opt out. This is more than the common 30 day return period to which many commercial bills and notices are subject.

The argument that the Opt-Out Form is unfair because it does not explicitly state that a lower coverage amount will result in a lower premium is equally unfounded. Neumann Br. at 7. No objector raised this issue in front of the District Court, so it is waived for purposes of this appeal. *See Gallik*, 56 F. App'x at 429. In any event, it is within common understanding that a lower coverage amount will result in a lower premium, and to the extent that a borrower is confused about this, the borrower is able to call the Bank and ask for more information regarding the insurance requirements and potential impact on premium amounts.

Lastly, the District Court acted within its discretion by approving the Settlement despite the fact that prospective relief is to last for only a period of three years. *See* Vitale Br. at 3. A settlement is a compromise of competing interests, and Bank of America would not agree to be locked into prospective relief that would last indefinitely, particularly where it is within its authority to require coverage at replacement cost.

## III. The District Court Did Not Abuse Its Discretion Because It Is Not Improper to Release Claims.

The Vitales argue that the District Court should not have approved the Settlement because it causes them to release their lender-placed flood insurance claims against Bank of America, and particularly their ability to bring a claim against Bank of America in New York state court. This objection demonstrates a fundamental misunderstanding regarding the nature of settlements, which almost

17

always include such a release of claims. If these class members did not wish to

release their claims against the Bank, then they should have requested exclusion

from the settlement class – and they were informed of their option to do so.

Obviously, there is nothing improper with a settlement that contains a release of

claims concerning the subject matter of the litigation. And there is nothing

improper about a settlement in federal court that releases state court claims.[10] This

objection is frivolous.

## IV.   The District Court Did Not Abuse Its Discretion By Approving the Settlement Despite the Fact that Certain Briefs Were Filed Under Seal.

Finally, Neumann contends that the approval of the settlement was improper

because the record was "heavily sealed." Neumann Br. at 8 ("the exceedingly high

number of documents filed under seal in this case . . ."). Neumann waived this

issue because although it was contained within his objection, he abandoned it in his

Opposition to Plaintiffs' Motion for Final Approval, SER128-132. *Gallik*, 56 F.

App'x at 429.[11] In any event, no class member moved to unseal any filing.

---

[10] *See, e.g.*, *Class Plaintiffs*, 955 F.2d at 1287-88 (holding that a federal court can release state claims arising from the same nucleus of operative facts); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221-22 (5th Cir. 1981) ("[T]he [district] court had power to release the state claims. . . .").

[11] In his objection, Neumann argued that the amount of the settlement was inadequate despite the fact that the "size of the Class is hidden from the public since Plaintiffs' *entire* class action brief was filed under seal . . ." Neumann Obj. at 2. Neumann, though, did not object to the fact that the brief was sealed nor did he move the District Court to unseal that brief (or any other document).

18

Regardless, the only specific information that Neumann claims to want from the sealed briefs is the size of the class. Neumann Obj. at 2. This information is available in the briefs regarding the Settlement, all of which were publicly filed. *See, e.g.*, Pls.' Unopposed Mot. for Preliminary Approval of Class Action Settlement, SER329-332. But even if Neumann contends that he is entitled to other information within sealed briefs, the District Court was well within its discretion to approve the settlement.

Each class member was provided with a mailed notice, pre-approved by the Court, that included all of the material terms of the Settlement, including explicit instructions on how to opt out, object, or seek additional information. The District Court held that this notice was sufficient and provided class members with "all required information" including, among other things:

> (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) an explanation of which Settlement Class Members must submit a claim and instructions as to how they may do so and the deadline for doing so; (5) a disclosure of the release of claims should they choose to remain in the Settlement Class; (6) an explanation of the Settlement Class Members' opt-out rights, the date by which Settlement Class Members must opt out, and information regarding how to do so; (7) instructions about how to object to the Settlement and the deadline for Settlement Class Members to submit any objections; (8) the date, time, and location of the Final Approval Hearing; (9) the internet address for the settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; (10) the names of the law firms representing the Settlement Class, and contact information for the co-lead law firms; and (11) information regarding how Class

19

Counsel and the named Class Representatives would be compensated.
The Class Notice included a detailed plan for allocation of the
Settlement Shares and stated that the recovery from the Settlement
Fund would be a *pro rata* portion of an individual claimant's
Settlement Shares.

Opinion and Order, SER091-092. The notice complied with the Ninth Circuit's

requirements. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012); *see*

*also Rodriguez*, 563 F.3d at 962. It is not necessary to give class members "all of

the details of the settlement but only to fairly apprise the class members of the

terms of the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV,*

*Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).[12]

## <u>CONCLUSION</u>

For the foregoing reasons, Bank of America respectfully requests that this

Court affirm the District Court's orders approving the settlement of this case and

entering final judgment.

---

[12] In any event, when approving a settlement, the question is whether the court –
not the unnamed class members – has all the information needed to evaluate
whether the settlement is fair, reasonable, and adequate. *See Hemphill v. San
Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2005) ("The
fundamental question is whether the district judge has sufficient facts before him to
intelligently approve or disapprove the settlement."). Because the District Court
had access to the sealed briefs, it did not abuse its discretion in approving the
Settlement.

Dated: March 4, 2015                    Respectfully submitted,

                                        s/John C. Englander
                                        John C. Englander
                                        Matthew G. Lindenbaum
                                        Katherine Aldrich
                                        David S. Kantrowitz
                                        GOODWIN PROCTER LLP
                                        Exchange Place
                                        Boston, MA 02109
                                        (617) 570-1000

                                        David L. Permut
                                        GOODWIN PROCTER LLP
                                        901 New York Avenue, N.W.
                                        Washington, DC 20001
                                        (202) 346-4000

                                        Tanya Durkee Urbach
                                        Peter D. Hawkes
                                        LANE POWELL PC
                                        Suite 2100
                                        601 S.W. Second Avenue
                                        Portland, OR 97204
                                        (503) 778-2100

                                        *Attorneys for the Defendant-Appellee*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, Defendant-Appellee states that C.A. No. 14-35850 arises out of the same Settlement approved by the District Court that is the subject of these consolidated appeals.  That appeal, filed by Objectors-Appellants Daniel J. Hall and Lanette Hall, is currently the subject of a pending Motion for Summary Affirmance and Dismissal.


Dated:  March 4, 2015                    s/John C. Englander

## <u>RULE 32(a) CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type volume limitations of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains **4,917** words, excluding the parts exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it appears in a proportionally spaced typeface in 14-point font.


Dated:  March 4, 2015          <u>s/John C. Englander        </u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **March 4, 2015**, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

 s/John C. Englander